UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number:  14-21252-CIV-MORENO**

PHILIP JACKSON and STEPHEN LARGESS,
on behalf of themselves and others similarly
situated,
            *Plaintiffs*,

vs.

U.S. BANK, N.A., ASSURANT, INC. and
AMERICAN SECURITY INSURANCE
COMPANY,
            *Defendants*.

_____/

## ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS

This matter comes before the Court upon joint review of Defendant U.S. Bank, N.A.'s

Motion to Dismiss (**D.E. No. 20**), filed on **June 23, 2014**, and Defendant American Security

Insurance Company's Motion to Dismiss (**D.E. 25**), filed on **June 23, 2014**. For the foregoing

reasons, the Court DENIES both Defendants' Motions to Dismiss. Plaintiffs plead factual content

that allows the Court to draw the reasonable inference that Defendants may be liable for the

misconduct alleged, so the case shall not be dismissed at this stage in the litigation.

I.      Factual Background

        Defendant American Security Insurance Company ("ASIC") provides monitoring services

and issues insurance policies covering borrowers' properties when borrowers fail to provide proof

of acceptable insurance as required by their mortgages. These monitoring services and policies are

provided pursuant to contracts with mortgage lenders and servicers, including Defendant U.S. Bank,

N.A. ("U.S. Bank"). Plaintiffs filed this class action Complaint against Defendants with respect to

a hazard lender-placed insurance ("LPI") program in April 2014. In recent years, such complaints have become commonplace in this District. Several such cases have come before this very Court. *See Fladell v. Wells Fargo Bank, N.A.*,No. 13-60721; *Lopez v. HSBC Bank USA*, No. 13-21104; *Saccoccio v. JP Morgan Chase Bank, N.A.*, No. 13-21107. Plaintiffs' seven causes of action are all grounded in familiar allegations—that U.S. Bank received "kickbacks" in connection with LPI and did not disclose the same, and that the LPI coverage was excessive and retroactive. Defendants both filed motions to dismiss Plaintiffs' Complaint in June 2014, and because these motions invoked similar authorities and arguments, the Court reviews them together.

II.   Standard of Review

Under Rule 12(b)(6), a complaint must be dismissed when it fails "to state a claim upon which relief can be granted." "[A] complaint must allege enough facts to state a claim to relief that is plausible on its face and that rises above the speculative level." *Traylor v. P'ship Title Co., LLC*, 491 F. App'x 988, 990 (11th Cir. 2012). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[P]lausibility" demands "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

III.   Legal Analysis

Mortgage lenders and servicers have been litigating force-placed insurance claims brought in class action lawsuits nationwide for more than three years, and have failed to procure dismissal in the vast majority of the dozens of cases they have defended. *See, e.g., Carden v. ING Bank, FSB,* No. 9:13-cv-80659-KLR (denying motion to dismiss breach of contract, breach of implied covenant, unjust enrichment, breach of fiduciary duty, and tortious interference claims, noting that "the majority, if not all, [FPI cases that have preceded the current case] have allowed the plaintiffs' FPI claims to proceed"); *see also Hamilton v. SunTrust Mortg., Inc.,* No. 13-cv-60749-JIC, 2014 U.S. Dist. LEXIS 41668 (S.D. Fla. Mar. 25, 2014); *Williams v. WellsFargo Bank, N.A.,* No. 11-cv-21233-CMA, 2011 WL 4368980 (S.D. Fla. Sept. 19, 2011). Here, Defendants distinguish their Motions to Dismiss with a heavy reliance on two recent appellate decisions. Upon careful review, however, these two decisions are distinguishable, and Defendants do not meet the burden of demonstrating that Plaintiffs fail to state a claim upon which relief can be granted in any Count of their Complaint.

A.   Recent Decisions by the Seventh and Eleventh Circuits Do Not Compel Dismissal of Plaintiffs' Kickback Claims.

Defendants argue that recent opinions by the Seventh and Eleventh Circuits in *Cohen v. American Security Insurance Co.,* 735 F.3d 601 (7th Cir. 2013), and *Feaz v. Wells Fargo Bank, N.A.,* 745 F.3d 1098 (11th Cir. 2014), should compel dismissal of Plaintiffs' kickback claims. The Court determines, however, that the allegations in both cases are materially distinct from those here. The court in *Cohen* approved dismissal of a borrower's claims that she had been charged for kickbacks because the payments she described in her complaint were payments for work she alleged had been

performed by an affiliate of the lender —she described earned commissions, and sought to recover

by labeling them "kickbacks." 735 F.3d at 607. The complaint in *Feaz* involved force-placed flood

insurance and was similarly conclusory; the allegations lacked ultimate facts to support a holding

that the plaintiff had, in fact, been charged for a bribe. 745 F.3d at 1101. Here, by contrast, Plaintiffs

allege that kickbacks were paid to U.S. Bank that were entirely unearned, and Defendant ASIC

misled borrowers by representing to them that the amounts were payments for work that had been

performed. The Court joins two other district courts in holding that allegations like Plaintiffs' are

materially distinct from those in *Cohen* and *Feaz* so as to render those opinions inapposite. *See*

*Hamilton*, 2014 U.S. Dist. LEXIS 41668, at \*26-30; *Ellsworth v. U.S. Bank, N.A.*, 2012 U.S. Dist.

LEXIS 38691, at \*63 (N.D. Cal. Mar. 21, 2014).[1]


 B. Plaintiffs Have Stated Claims Based on Excess Coverage.

 U.S. Bank relies on *Feaz*–which involves force-placed flood insurance–to argue that

Plaintiffs here cannot state claims based on excess coverage. Excess flood coverage claims, however,

are distinct from Plaintiffs' hazard insurance claims. Plaintiffs alleging excess coverage forced in

the flood insurance context base their claims on coverage placed in excess of that required by the

National Flood Insurance Act ("NFIA") and a provision in borrowers' mortgage agreements

specifically governing flood insurance, which generally requires the borrower to "insure all

---

 [1]The Court may consider pleadings from other actions on a Rule 12(b)(6) motion to
dismiss without converting the motion to one for summary judgment. *See, e.g., Cooks v. Walmart
Stores*, No. 2:13-cv-526, 2013 U.S. Dist. LEXIS 135502, at \*2 n.1 (N.D. Ala. Sept. 23, 2013)
("[A]mple authority exists which recognizes that matters of public record, including court
records in related or underlying cases which have a direct relation to the matters at issue, may be
looked to when ruling on a 12(b)(6) motion to dismiss.") (citations omitted).

improvements on the Property ... against loss by floods to the extent required by the Secretary [of the Department of Housing and Urban Development]." *Feaz*, 745 F.3d at 1102. In these cases, the question presented is whether federal requirements establish a minimum or maximum amount of flood insurance that the borrower is required to maintain and, correspondingly, whether the lender breached the mortgage agreement or violated other extracontractual duties to borrowers by requiring them to maintain flood insurance in excess of the amount required by federal law. The question before the Court here is different. Plaintiffs allege that Defendants charged them for two types of "excess" hazard coverage: retroactive coverage for periods where no claims were made and duplicative coverage for periods when voluntary coverage or the mortgage's Standard Mortgage Clause or the Lender's Loss Payable Endorsement, which generally cover the lender for a minimum of ten days after a lapse in voluntary coverage, were in effect. In these instances, borrowers are charged for unnecessary coverage, either because there was no risk to cover or coverage was already in place. These allegations render Plaintiffs' claims distinct from those brought by plaintiffs bringing claims based on forced flood coverage.

C.     The National Bank Act Does Not Preempt Plaintiffs' State Law Claims.

Defendants also attempt to argue that the National Bank Act, 12 U.S.C. § 1 *et seq.* ("NBA"), preempts state law claims presented here. A cursory review of the relevant caselaw, however, demonstrates that courts routinely reject the argument that the National Bank Act preempts state law claims in force-placed insurance cases. *See, e.g., Leghorn v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 1093, 1107-14 (N.D. Cal. 2013); *Kunzelmann*, 2012 U.S. Dist. LEXIS 186134, at *12-16; *Williams*, 2011 U.S. Dist. LEXIS 119136, at *19-35. U.S. Bank raises the argument hoping for a

different result, but this is not a case of "whoever tells the best story wins." "Amistad", DreamWorks

SKG (1997). The NBA and related regulations simply do not "preempt the entire field of banking."

*Deming v. First Franklin,* No. C09-5418, 2010 WL 2194830, at *3 (W.D. Wash. Apr. 23, 2010).

Though the NBA does "shield[] national banks from unduly burdensome and duplicative state

regulation, federally chartered banks remain subject to state laws of general application in their daily

business to the extent such laws do not conflict with the letter or the general purpose of the NBA."

*Gebhard v. Bank of Am., N.A.,* No. 2:09-CV-03159, 2010 WL 580995, at *4 (E.D. Cal. Feb. 11,

2010) (citation and internal quotations omitted). Therefore, "[s]tates may regulate the activities of

national banks so long as they do not prevent or significantly interfere with the exercise of the bank's

authority." *Mwantembe v. TD Bank, N.A.,* 669 F. Supp. 2d 545, 549 (E.D. Pa. 2009).

The scope of NBA preemption is far narrower than U.S. Bank suggests. The "fees and

charges" at issue here are not banking fees at all—they are insurance premiums and administrative

fees calculated and charged by insurance companies for their products and services. 12 C.F.R. §

7.4002(b)(2)(i), 7.4002(b)(2)(ii). Section 7.4002 of the NBA does not preempt Plaintiffs' claims

because it addresses service charges imposed by national banks, not insurance premiums imposed

by insurance companies. The section would not preempt Plaintiffs' claims even if it did apply,

moreover, because Plaintiffs do not challenge U.S. Bank's authority to establish the premiums, only

its alleged manipulation of the premiums. *See* 12 C.F.R. § 7.4002(b)(2); *see, also Gutierrez,* 2010

WL 1233885, at *2 (finding no preemption where the practice challenged did not question bank's

right to charge particular overdraft fee).

D.     The Filed-Rate Doctrine Does Not Bar Plaintiffs' Claims.

Both Defendants' Motions contend that the filed-rate doctrine bars Plaintiffs' claims because the rates used to calculate the premiums charged to U.S. Bank were approved by Missouri and Rhode Island regulators. Courts in this and other districts have rejected this argument, however, declining to apply the doctrine to lenders, servicers, or insurers in the force-placed insurance context. *See Kunzelmann*, 2012 U.S. Dist. LEXIS 186134, at *8-10; *Abels*, 678 F. Supp. 2d at 1277-78; *accord Hoover*, 2014 U.S. Dist. LEXIS40743, at *24-25 (citing "substantial body of case law" rejecting application of filed-rate doctrine on motion to dismiss in force-placed insurance cases) (citations omitted); *Cannon v. Wells Fargo Bank, N.A.,* 917 F. Supp. 2d 1025, 1036-38 (N.D. Cal. 2013); *Gallo v. PHH Mortg. Corp.*, 916 F. Supp. 2d 537, 543-49 (D.N.J. 2012).

The Court's determination here is consistent with these other decisions. The Court finds that the filed-rate doctrine is unavailable as a defense in this litigation because Defendants are not insurers subject to the relevant regulatory regime." *Hoover*, 2014 U.S. Dist. LEXIS 40743, at *30. U.S. Bank is not subject to administrative oversight by state insurance commissions; as a result, its authority to regulate and approve insurers' rates does not touch Plaintiffs' claims that U.S. Bank, a lender and servicer, included impermissible costs in the amounts it charged borrowers for force-placed insurance. *See id.*; *see also Leghorn*, 950 F. Supp. 2d at 1115-16 (doctrine inapplicable because plaintiff had not challenged lawfulness of rate, but bank's decision to choose insurer to pay a kickback); *Abels*, 678 F. Supp. 2d at 1277 (same).

The doctrine is also inapplicable here because Plaintiffs are not ratepayers. *See, e.g., Rothstein* 2013 WL 5437648, at * 8-9 (rejecting applicability of doctrine because rates had been approved for payment by mortgage lender, which was the rate payer, and not by borrowers).

Plaintiffs allege that U.S. Bank purchased a master policy from other Defendants, that the force-placed policies are commercial insurance policies, and U.S. Bank paid the insurance premiums to other Defendants. U.S. Bank, therefore, not Plaintiffs, is the alleged ratepayer barred from challenging the other Defendants' rates. The filed-rate doctrine does not apply. *See Square D Co. v. Niagara Frontier Tariff Bur., Inc.*, 476 U.S. 409, 422 n.29 (1986).

      E.     Plaintiffs' Claims Are Not Barred by the Voluntary Payment Doctrine.

U.S. Bank also argues that Plaintiffs' claims are barred by the voluntary payment doctrine because Plaintiffs paid amounts for force-placed coverage with full knowledge of the amounts they would be charged, that the amounts might cover commissions to U.S. Bank, and of the time periods for which coverage would be provided. But these facts are not material to Plaintiffs' claims. For the doctrine to apply, U.S. Bank would have to show that Plaintiffs had full knowledge of the allegedly undisclosed kickbacks and other wrongful conduct alleged. Moreover, the voluntary payment doctrine is an affirmative defense that ordinarily may not be raised on a motion to dismiss. *See, e.g., Ellsworth*, 908 F. Supp. 2d at 1083 (declining to dismiss FPI claim because voluntary payment defense was not apparent from face of complaint); *Gallo*, 916 F. Supp. 2d at 553 n.11 ("At this stage of the proceedings, it is not clear from the face of the [] Complaint if Plaintiff had full knowledge of the relevant facts when he made payments under the force-placed insurance policy.) It is imprudent to consider it here.

      F.     Plaintiffs Have Sufficiently Plead RICO Claims.

Defendants argue for dismissal of Plaintiffs' Section 1962(c) Racketeer Influenced and

Corrupt Organizations Act ("RICO") claims, claiming that disclosures provided to Plaintiffs are "not consistent" with mail and wire fraud, relying again on *Cohen* and *Feaz*, another force-placed insurance opinion addressing RICO claims, *Weinberger v. Mellon Mortgage Co.*, 1998 WL 599192 (E.D. Pa. Sept. 10, 1998), and on theMcCarran-Ferguson Act ("MFA"), 15 U.S.C. § 1012(b)). But *Cohen* and *Feaz* do not apply here, because the allegations presented in those cases were materially distinct from those pled here, *see* Section A. Moreover, *Weinberger* has been distinguished in the force-placed insurance context. *See, e.g., Rothstein*, 2013 WL 5437648, at *13 ("In *Weinberger*, the court concluded that none of the acts in the alleged scheme. . .could be reasonably calculated to deceive, as the warning letters and notices had specifically stated that the force-placed insurance was a more expensive product that would not protect the plaintiffs' interests … In the current case, on the other hand, *Plaintiffs do not allege that the fraudulent scheme was intended to misrepresent the nature of LPI* or trick them into lapsing on their payments. Rather, the alleged scheme here is more simple: that "costs" and "reimbursements" listed in the letter as legitimately owed were materially overstated." (emphasis added)).

Plaintiffs sufficiently allege a RICO cause of action. Plaintiffs plead that U.S. Bank undertook to provide continuous hazard coverage on borrowers' properties in the event of a lapse, purchased a master policy from other Defendants and paid the premiums directly to them, used ASIC to provide loan tracking services at below cost, and that other Defendants paid a "commission" to U.S. Bank that was a wholly unearned kickback. They further allege that Defendants mailed notices to borrowers, with U.S. Bank's permission and on its letterhead, representing that the amounts charged them reflected the "cost of insurance," and omitting to mention that the same amounts covered unearned kickbacks and other charges. These allegations state a claim for violation of

section 1962(c). *See, e.g., Cannon*, 2014 U.S. Dist. LEXIS 11163, at \*7-11 (upholding RICO claim because "Defendants' non-disclosure of the kickbacks may be the basis for the scheme to defraud").

ASIC argues that the McCarran-Ferguson Act ("MFA") bars Plaintiffs' RICO claims. The wrongful conduct alleged, however, does not constitute the "business of insurance," and the RICO statute does not "invalidate, impair, or supersede" the applicable Missouri or Rhode Island insurance law. That Act "precludes application of a federal statute in face of state law enacted . . . for the purpose of regulating the business of insurance," if the federal measure does not "specifically relat[e] to the business of insurance," and would "invalidate, impair, or supersede" the state's law." *Humana Inc. v. Forsyth*, 525 U.S. 299 (1999) (quoting 15 U.S.C. § 1012(b)). Here, Plaintiffs do not challenge ASIC's "pricing determinations" or the rates that it sets for the force-placed coverage that it sells to U.S. Bank. Plaintiffs instead challenge ASIC's participation in an alleged larger scheme whereby borrowers are charged by their lender, U.S. Bank. ASIC's role in that scheme is not alleged to involve the "business of insurance." ASIC is charged with paying bribes (kickbacks) to U.S. Bank to maintain its exclusive relationship with the lender, offering the lender below-cost administrative services (which properly belong to the servicer), and accused of sending misleading notices to borrowers purporting to be U.S. Bank. Plaintiffs' claims do not involve the "business of insurance," but instead, the lender's loan servicing obligations, so the MFA has no application on Plaintiffs' RICO claims here. *See Cannon*, 2014 U.S. Dist. LEXIS 11163, at \*18-24; *Moore v. Fidelity Fin. Servs.*, 884 F. Supp. 288, 292-93 (N.D. Ill. 1995) (RICO would not impair, invalidate or supersede Illinois insurance law under MFA in force-placed context); *Bancoklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1099 (10th Cir. 1999).

G.     Plaintiffs Have Sufficiently Alleged TILA Claims.

U.S. Bank argues that Plaintiffs' Truth in Lending Act ("TILA") claims ought be dismissed. The fundamental purpose of TILA, 15 U.S.C. §§ 1601, *et seq.*, is to provide borrowers with clear and accurate disclosures of loan terms. *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998); 12 C.F.R. § 226.17(c). With respect to residential mortgages, TILA aims "to assure that consumers are offered and receive residential mortgage loans on terms . . . that are understandable and not unfair, deceptive, or abusive." 15 U.S.C. § 1639b(a)(2). Additionally, it ensures that "a creditor may not change the terms of the extension of credit if such changes make the disclosures inaccurate, unless new disclosures are provided." *Id.* § 1639(a)(2)(A).

Plaintiffs sufficiently state a cause of action in their Complaint as to their TILA claims. Plaintiffs allege that U.S. Bank changed the terms of Plaintiffs' loans, thus creating new loan obligations by adding force-placed insurance to Plaintiffs' outstanding loan balances. The alleged kickbacks would have been subject to TILA's disclosure requirements. Kickbacks are not properly classified as "premiums for insurance" under the exclusion cited by U.S. Bank, 12 C.F.R. §§ 226.4(b)(8), 226.4(d)(2). U.S. Bank would have been required to disclose the amount and nature of the "commissions" as part of the "finance charge" under 12 C.F.R. § 226.18(d) because unearned commissions are not authorized by Plaintiffs' mortgages. *See Cannon*, 2013 WL 132450, at *16–17 (holding that TILA claim based on kickback theory in force-placed insurance litigation was viable).

Notably, U.S. Bank argues that Plaintiffs' TILA claims are barred by TILA's one-year statute of limitations. However, on the pleadings, Plaintiffs' TILA claims are subject to equitable tolling. The doctrine of equitable tolling "saves" a TILA claim where a plaintiff has "been prevented from [bringing suit] due to inequitable circumstances." *Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d

703, 706–08 (11th Cir. 1998). Dismissal of a TILA claim at the pleading stage is appropriate only "if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). Here, Plaintiffs claim that they had no means by which to discover U.S. Bank's practices because U.S. Bank never disclosed its force-placed insurance scheme to borrowers, and hid the fact that inflated premiums resulted from U.S. Bank's kickback scheme. The Court thereby upholds Plaintiffs' TILA claims here, mindful that "[a]s a remedial statute, TILA must be construed liberally in favor of the consumer." *Bragg v. Bill Heard Chevrolet, Inc.*, 374 F.3d 1060, 1065 (11th Cir. 2004).

H.    Plaintiffs Have Sufficiently Alleged Tortious Interference Claims.

Finally, ASIC argues that Plaintiffs have failed to sufficiency plead its tortious interference claims, relying on its filed-rate doctrine defense. This argument fails for the same reasons as its filed-rate doctrine defense. *See* Section D. In addition, the doctrine does not apply to entities like U.S. Bank, which do not file insurance rates. *See Abels*, 678F. Supp. 2d at 1277. Because Plaintiffs have pled that U.S. Bank breached their mortgage agreements and that the Assurant Defendants intentionally and unjustifiably caused such breaches, Plaintiffs have sufficiently stated claims for tortious interference to survive a motion to dismiss. *See, e.g., Hamilton*, 2014 U.S. Dist. LEXIS 41667, at *17-24; *Williams*, 2011 WL 4368980, at *12.

The Court also rejects ASIC's privilege defense at this time, because Plaintiffs have alleged that the Defendants were not justified in their interference, as they acted with improper means. Plaintiffs allege that Defendants manipulated the market for force-placed insurance and knowingly

-12-

implemented a scheme to pass kickbacks to U.S. Bank and otherwise unjustifiably inflate the amounts charged to borrowers. *See Western Mass. Blasting Corp. v. Metro. Prop. & Cas. Ins. Co.*, 783 A.2d 398, 401-02 (R.I. 2001) (plaintiff may overcome the privilege by showing 'actual malice' on the part of the alleged wrongdoer"). ASIC is permitted to re-argue the defense at a later stage in this litigation.

IV.    <u>Conclusion</u>

Ultimately, the Court determines that for each Count of their Complaint, Plaintiffs plead factual content that allows the Court to draw the reasonable inference that Defendants are liable for the misconduct alleged. Moreover, even though both Defendants allege that this cause should be dismissed because Plaintiff Largess's wife and co-mortgagor, Elizabeth Leland, has not been joined and she is an indispensable party, the Court finds that she need not be joined as a party. Plaintiffs have described that her interests and her husband's are aligned, and their legal claims are one and the same—their payment obligations with respect to the mortgage and the force-placed insurance provision are joint and several, and a final judgment on Plaintiff Largess's claims in this case will have a preclusive effect on any future claims by Ms. Leland. It is accordingly

ADJUDGED that Defendants' Motions to Dismiss are both DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this ___ day of August, 2014.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:
Counsel of Record

-13-